IN THE UNITED STATES DISTRICT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 12-cv-01174-RPM

PUBLIC SERVICE COMPANY OF COLORADO
d/b/a XCEL ENERGY, and
XCEL ENERGY SERVICES INC.,

    Plaintiffs,
v.

AXIS SURPLUS INSURANCE COMPANY,

    Defendant.

---

ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT

---

Invoking the jurisdiction provided by 28 U.S.C. § 1332, Public Service Company of Colorado, dba Xcel Energy, ("Public Service") seeks recovery from AXIS Surplus Insurance Company ("AXIS") for payment made to settle claims for wrongful death and personal injuries brought on behalf of employees of RPI Coating, Inc. ("RPI"), a contractor performing work on a large water pipe at a hydroelectric power plant owned and operated by Public Service located on Guanella Pass in Colorado. The injuries and deaths were caused by a chemical fire inside the pipe.

AXIS issued a general commercial liability policy (Policy No. EAP 716815-06) and an excess policy (Policy No. ELU 729339/01/2006) to the parent of RPI with RPI as the named insured and Public Service as an additional insured because RPI was contractually obligated to include it.

The AXIS primary policy provides $1,000,000 of insurance coverage per occurrence.

The AXIS excess policy provides $5,000,000 of insurance coverage per occurrence in excess of the AXIS primary policy. These limits apply "regardless of the number of . . . Insureds; . . . Claims made or 'suits' brought; . . . or Persons or organizations making claims or bringing 'suits.'" (AXIS primary policy III.1). The policies provide that AXIS will pay defense costs incurred in connection with a covered claim and that such payments will not reduce the limits of insurance.

The contract with RPI was signed by Xcel Services, Inc., as agent for Public Service. Both Xcel Services and Public Service are owned by Xcel Energy, Inc. Public Service and Xcel Energy were named as defendants, along with RPI in the underlying lawsuits, *Foster et al. v. Xcel Energy Inc. et. al.*, Case No. 08 CV 6957, in the District Court for the City and County of Denver, Colorado ("*Foster*"), and *Aguirre et al. v. Robison-Prezioso, Inc. et al.*, Case No. CV051868 in the Superior Court of California, County of Los Angeles, Southeast District, Long Beach ("*Aguirre*").

The fire happened on October 2, 2007. The *Foster* case was filed on August 6, 2008, and the *Aguirre* action was filed on September 30, 2008. Public Service retained Kevin Hecht, of White and Steele, to represent it and the other Xcel defendants and gave timely notice of the litigation to AXIS. By letter dated January 23, 2009, AXIS accepted the defense, subject to a full reservation of rights and retained Dan Fowler of Fowler, Schimberg and Flanagan. Hecht continued to represent Public Service as co-counsel. AXIS accepted the defense of RPI, retaining Mike Jones of Hall and Evans.

Public Service retained J.W. Montgomery III of Jones Day as coverage counsel and AXIS retained James Green of Markusson, Green and Jarvis for that purpose. Those two

lawyers conferred and agreed that both Hecht and Fowler would work cooperatively with Public Service, reserving the right to obtain reimbursement for fees for Hecht because AXIS' reservation of rights created a conflict of interest.

In letters dated April 8, 2009, AXIS informed Public Service and RPI that AXIS had separated its files so that information provided to AXIS would be kept confidential as to each insured, unless each insured authorized AXIS to release such information to the other insured. (Pls.' Ex. 12).

When Public Service and AXIS coverage lawyers were exchanging correspondence about the selection and payment of defense counsel in early March, 2009, Public Service had not yet answered the complaints in the underlying actions. The *Aguirre* action, originally filed in California, had been dismissed on the basis of *forum non conveniens* but the *Aguirre* plaintiffs intended to refile their claims in Colorado as part of the *Foster* action. In the *Foster* action, the plaintiffs had filed four amended complaints and were seeking leave to file a fifth. The proposed fifth amended complaint proposed to add Xcel Services as a defendant.

In the *Foster* action, Public Service had entered an appearance and had obtained extensions to respond until after the plaintiffs finalized their complaint. Discovery had not yet begun.

Hecht initiated settlement negotiations with counsel for the plaintiffs in *Foster* and *Aguirre*. The result was that a mediation with a former state judge was planned for May 7-8, 2009, without participation by RPI. Fowler reported this development by letter to AXIS, dated March 24, 2009.

In mid-April, 2009, AXIS asked Fowler and Hecht to provide their evaluations of the cases, including damages, Public Service's liability exposure, the liability of the other defendants and their proportionate liability, and an evaluation of "the workers' compensation bar as it applies to Public Service." (Def.'s Ex. D, #33-4). That reference is to the possible defense that Public Service would be a statutory employer entitled to the exclusive remedy provision of the Colorado Workers Compensation Act. Fowler complied by a letter dated April 28, 2009.

By letter dated April 29, 2009, Green informed Montgomery that AXIS agreed to withdraw its reservation of rights and would not stand in the way of Public Service settling with "funding from other sources, namely Public Service or its other insurers." (Def.'s Ex. F, # 33-6). Green cautioned that AXIS was not consenting to settlement, explaining that "to the extent that Public Service seeks contribution by AXIS for any settlement, it serves to reduce the amount of coverage available to RPI as well[.]" (*Id.*). Green's letter stated that AXIS would "endeavor to the best of its ability to treat both insureds equally and not to take any course which would adversely affect the other." (*Id.*).

By letter dated May 1, 2009, Montgomery told Green that Public Service acknowledged its understanding "that AXIS has not agreed to fund any such settlement ...." (Def.'s Ex. G).

The Xcel entities reached a conditional settlement with the underlying plaintiffs to settle claims against Public Service and Xcel Energy, Inc. and any potential claims against Xcel Services on May 8, 2009.

Public Service asked AXIS to contribute to the amount of the proposed settlement, less than the $6,000,000 of coverage. When AXIS declined, Public Service asked permission to proceed to pay the settlement without being in breach of the cooperation clause of the insurance

policies, requiring consent.  When AXIS declined, Public Service requested that the insurer commit that at least the amount of the settlement would be available to pay any adverse judgment.  AXIS declined.

When Public Service proposed that AXIS pay half of the proposed settlement amount with another carrier offering to pay the other half, AXIS asked for permission to disclose the conditional settlement with RPI.  Underlying Plaintiffs' counsel did not agree that the amount to be paid could be disclosed to RPI.

In an email from Green to Montgomery dated May 18, 2009, AXIS told Public Service that it could not take a position on the proposed settlement without fully discussing the settlement terms with RPI.  (Pls.' Ex. 23).  Green's email stated, "As things stand now, AXIS has not waived in any degree the consent to settle provision, and it has not been allowed permission to fully discuss the settlement with RPI." (*Id.*).

On June 1, 2009, the Xcel entities entered into settlement agreements with the underlying plaintiffs for settlement of the Underlying Actions.

Public Service continued to demand that AXIS provide reimbursement for a portion of the settlement amount.  AXIS refused to do so, expressing concerns about its obligations to RPI.

On June 11, 2009, RPI told AXIS that RPI "objects, and will object, to the contribution or participation by AXIS in the recent settlement of Public Service, where that contribution or participation would amount to, or result in, the depletion in any of the full limits of liability available to RPI for this matter[.]"  RPI also accused AXIS of withholding information related to the settlement. (Stipulated Facts ¶ 65).

An email from Hecht to Green dated June 16, 2009, communicated the following proposal:

> AEGIS and the Xcel Entities have proposed that AXIS pay [a certain amount] towards the settlement that was reached at the JAG session of May 7 and 8, 2009. This payment by Axis would be accepted as satisfying its obligation to Public Service and all Xcel Energy entities and to AEGIS, arising out of the personal injuries and deaths that were the subject of the JAG mediation. However, it would have no impact on other potential contractual or indemnity claims between PSCo/Xcel Energy and RPI or AXIS. This proposal will remain open until the close of business on June 19, 2009. If this proposal is not accepted, AEGIS and the Xcel Entities reserve their right to assert recovery for the full amount of the settlement, defense fees and costs.

(Pls.' Ex. 24).

On June 23, 2009, AXIS told Public Service that it had concluded that "advising RPI as to the demand [by Public Service against the AXIS policy] is appropriate" and that AXIS "will inform RPI's counsel as to the amount of the demand." (Pls.' Ex. 25).

On July 24, 2009, RPI told AXIS that it "continues to vehemently object to any contribution by AXIS toward the settlement of Public Service with the personal injury plaintiffs." It further told AXIS that RPI "will not, and would not, hesitate to pursue" a claim against AXIS for breach of the implied covenant of good faith and fair dealing if AXIS contributed to Public Service's settlement. (Stipulated Facts ¶ 67).

In a letter from Green to Hecht dated July 28, 2009, AXIS informed Public Service that AXIS had decided not to accept Public Service's proposal as to the *Foster* settlement. That letter stated that AXIS' decision was made after due consideration of RPI's comments with regard to the proposal and points that Hecht had made on behalf of Public Service. (Pls.' Ex. 26).

In letter from Green to Montgomery dated August 13, 2009, AXIS further clarified its position as follows:

-6-

> AXIS is willing to participate in future negotiations with Public Service with respect to Public Service's claim and the AXIS policy. As we have discussed, there are outstanding claims against AXIS' policy which, in our view, prevent negotiations with regard to the policy at this time. Once the outstanding claims against AXIS' other insured, RPI, are resolved or clarified, discussions with regard to Public Service's claims against the AXIS policy may be productive, and this letter is to indicate that AXIS will be willing to participate in future settlement discussion at that time. By indicating its willingness to participate in future settlement discussions, AXIS is not hereby waiving any policy defenses it has relating to claims by Public Service.

(Pls.' Ex. 27).

On August 27, 2009, the United States filed Criminal Case No. 09-cr-398-WYD against RPI, two RPI executives, Xcel Energy, Inc. and Public Service, alleging five counts of violations of workplace and safety and health regulations of the Occupational Safety and Health Administration resulting in the death, and a sixth count of obstruction of OSHA's investigation by RPI.

On November 24, 2010, RPI filed a motion to dismiss the *Foster* action pursuant to Rule12(b)(1) of the Colorado Rules of Civil Procedure, arguing that the exclusivity provision of the Worker's Compensation Act required dismissal of its employees' personal injury and wrongful death claims.  (*See* Def.'s Ex. I).

On March 10, 2011, the Denver court granted RPI's motion, concluding that the court lacked jurisdiction over the underlying plaintiffs' personal injury and wrongful death claims against RPI because it was "undisputed that the deaths and personal injuries resulting from the fire at the Cabin Creek Hydro Generation Station are compensable under the Workers' Compensation Act." (*See* Def.'s Ex. J).

The criminal trial of the charges against Xcel Energy, Inc. and Public Service commenced on May 31, 2011 and concluded on June 28, 2011, with not guilty verdicts.

RPI pleaded guilty to five counts of violations of OSHA regulations resulting in death, and aiding and abetting pursuant to 29 U.S.C. § 666 and 18 U.S.C. § 2. The criminal judgment entered on December 19, 2011, which ordered RPI to pay a fine of $100,000 to the United States Department of Justice; to pay restitution totaling $1,175,000 to the injured workers and/or their heirs/beneficiaries; to pay $275,000 to be transferred to civil counsel as attorneys' fees and costs associated with the civil litigation, and to pay $100,000 in fines and penalties to OSHA.

Public Service contends that AXIS improperly refused to consent to the settlement for an amount well below the policies' limits while also refusing to agree that coverage would be available to Public Service for that amount. The plaintiffs cite to cases holding that the insurer's consent is not required when coverage is uncertain because it is defending with a reservation of the right to dispute it. In such circumstances the insurance company can only dispute the resonableness of the settlement agreement.

That is not this case.

By withdrawing the reservation of rights on April 29, 2009, AXIS waived any right to dispute coverage. When Public Service entered into the settlement on June 1, 2009, AXIS was providing Public Service with a defense without reservation of rights. AXIS had merely declined to confirm that coverage would be available exclusively to Public Service in the amount of the proposed settlement because its other insured, RPI, may have a liability in an amount which would not be fully covered.

In *Marathon Ashland Pipe Line LLC v. Maryland Casualty Company*, 243 F.3d 1232, 1249 (10th Cir. 2001), the United States Court of Appeals for the Tenth Circuit cautioned against expansion of exceptions to the insured's duty of cooperation, explaining that to do so "would

introduce an element of uncertainty and unpredictability into insurance law regarding the extent of the insured's duty of cooperation."

In the AXIS policies, the no-voluntary-payments provision is not ambiguous. The plaintiffs breached that provision when they settled the underlying actions without AXIS' consent.

The Colorado Supreme Court has not addressed the question of whether an insured's breach of a no-voluntary-payments provision will bar coverage in the absence of prejudice to the insurer and cases from other jurisdictions are in conflict.

In *Lauric v. USAA Casualty Insurance Company*, 209 P.3d 190 (Colo. Ct. App. 2009), the Colorado Court of Appeals held the notice-prejudice rule applied to an insured's failure to notify the insurer and obtain its consent to a settlement in violation of notice and consent-to-settle clauses. 209 P.3d at 193. The Court reasoned that "forfeiting insurance benefits when the insurer has not suffered any prejudice would be a disproportionate penalty and provide the insurer a windfall based on a technical violation of the policy." *Id.* (citing *Friedland v. Travelers Indem. Co.*, 105 P.3d 639, 645-46 (Colo. 2005)).

The Colorado Supreme Court will probably adopt that view at some future time.

AXIS has shown actual prejudice. Public Service had a viable defense based on the exclusivity bar of the Colorado Workers' Compensation Act. AXIS was prejudiced by the lost opportunity to assert that defense. That defense was successfully asserted by RPI and Public Service was in the same position under Colorado law.

Public Service claims that AXIS breached the implied covenant of good faith and fair dealing by refusing to contribute to the settlement and that this purported breach relieved Public

Service of its obligation to obtain AXIS' consent to the settlement.

Public Service fails to appreciate that AXIS owed a duty of good faith to both of its insureds.

The undisputed evidence shows that Public Service – with full awareness of its obligations under the cooperation clause and the no-voluntary-payments provision – made an informed and voluntary decision to enter into an early settlements of the underlying actions without AXIS' consent.  AXIS did not breach any contractual, common law or statutory duty to Public Service by refusing to contribute to the settlement.

Based on the foregoing, it is

ORDERED that the plaintiffs' motion for partial summary judgment is denied; it is

FURTHER ORDERED that the defendant's motion for partial summary judgment is granted and the plaintiffs' first, third and fourth claims for relief are dismissed.

Dated: August 7th, 2013

BY THE COURT:

s/Richard P. Matsch
_____
Richard P. Matsch, Senior District Judge